Matter No. 171428 Santana-Diaz v. MetLife Insurance Company Good morning, honorable judges. My name is Efrain Maceira, attorney for Appellant. I request permission to address the court. Yes. We come before this honorable court for the second time and again to request reversal of the judgment of the U.S. District Court for the State of Puerto Rico. That court held that the plan administrator of Shell Chemical Yabucoa Inc. Employee Welfare Benefit Plan properly denied long-term disability benefits to the employee Appellant Dioniso Santana-Diaz. The plan administrator is Appellee Metropolitan Life Insurance Company. MetLife is the entity that both resolves benefits and claims and pays meritorious claims. Santana-Diaz initially filed his claim for long-term disability benefit which was approved in 2008 for a 24-month period extending until November 2010. Although the plan excludes from continuation long-term disability benefits neuromusculoskeletal and soft tissue disorder, including but not limited to any disease or disorder of the spine or extremities and their surrounding soft tissue, including sprains, strains of joints and adjacent muscles, it does provide for continuation of disability benefits if there is objective evidence among other radiculopathies. Therefore, the issue to be addressed by this honorable court is whether there are objective clinical findings on Santana's record that he has a diagnosis of radiculopathies. The answer is absolutely yes. There are objective clinical findings in the administrative record that Santana-Diaz has such a diagnosis. In the policy, there is a glossary of terms and it defines radiculopathies as the disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology. In this case, radiculopathy refers to a set of conditions in which one or more nerves are affected and do not work properly. That is a neuropathy. The location of the injury is at the level of the nerve roots. That is why it is called radix. This can result in pain, weakness, numbness, or difficulty controlling specific muscles. Now, there is an issue in this case where the company, Metropolitan Life Insurance, I believe, addressed importance to the findings of Dr. Luis Catoni, who is a family care, who has been a patient of Santana-Diaz. He has been taking care of the epilepsy since 1996, and he addressed importance to the results of the tests he performed on the epilepsy. But the reality is that the diagnosis of radiculopathy begins with a medical history and physical examination by the physician. The doctor will begin with a thorough history of the patient and physical exam. Once the doctor identifies the site location of the symptoms, he or she can determine which nerves are responsible for the condition. The objective clinical evidence on the record, besides that of Dr. Luis Catoni, is an electromyogram, EMG, which was performed by a physiatrist and Dr. Jesus Maldonado. The EMG can measure the electrical importance of the muscles when at rest and during contraction. This helps to find evidence of damage. When Dr. Maldonado performed the EMG on the epilepsy, he diagnosed that he had a lesion of the femoral nerve. And that's indicated in the administrative record right before Medlife made the final decision of denying continuation of term disability benefits for Mr. Santana-Diaz. The plan as stated here provides for continuation of disability benefits until the year 65 if the employee, in this case the disabled person, is below 60 years of age. We understand that according to the definition of disability contained in the plan and the objective clinical evidence that is on the record, Mr. Santana-Diaz was entitled for continuation of disability benefits, which were arbitrarily denied by Medlife. We want to bring to the attention of the honorable court. Can I just understand the nature of the argument? There was evidence you put forward of the diagnosis. Then there's competing evidence that the plan's relying on and rejecting it. Is your argument that it doesn't matter how good that competing evidence is because you put forward affirmative evidence? Or is your argument that the competing evidence is so weak that it would be arbitrary to conclude that your evidence wasn't strong enough? No, Your Honor. Our argument is that there was evidence on the record. This is the situation. The plan, the definition of disability, and the plan document require objective clinical evidence of such condition. I thought it was enough objective evidence to establish the condition. It requires that there is objective clinical evidence of the condition, in this case radiculopathy. Well, is it just any evidence or enough evidence to establish the condition? It doesn't. It just. What's the text of it? Okay. It says. Okay. Let me get the definition. Definition. Okay. The plan has a definition of disability, which is at docket 33-2 at page 19 to 20. And it says. And it says. Now, the policy limitations. Policy limitations. A limitation for disability due to particular conditions. Mostly benefits are limited to 24 months during your lifetime if you are disabled due to mental or nervous disorder or disease, or let the disability result from schizophrenia, bipolar disorder, dementia, or organic brain disease. And now the other clause that applies in this case. Neuromusculoskeletal and soft tissue disorder, including but not limited to any disease or disorder of the spinal extremities and their surrounding soft tissue, including sprains and sprains of joints and adjacent muscles, unless the disability has objective evidence of, and one of them is, radiculopathy. So it's plainly stated there, if you have objective evidence of radiculopathies, then you qualify for the exclusion. And that's even if there is competing evidence that reasonably could suggest an opposite conclusion? I'm just trying to figure out, is that your position? Okay. We understand that according to the language, once you have the objective clinical evidence, which is the plain language of the policy, you qualify for that. But I would like to add that specifically in this case, there is no compelling evidence to the contrary, because the companies rely on the report prepared by two experts. One of them ignores, although he mentioned that on the record, he pays no attention to that, and adds that there is no evidence of limitations or functional limitations. That is not included in the policy. I mean, that's not the plain language. We don't mean to say that a company could not put that kind of limitation in a policy, a disability policy, but we say that that is not included in this policy. And the policy, the company should follow the specific provisions in the contract. Counsel, my understanding is that MetLife rejected the long-term disability saying, in essence, two things. Dr. Catone reached conclusions about neuropathy, or at least made notes about it, but that it was not supported. That's the first. But that was not supported by the clinical evidence. The clinical evidence that you have described today is the result of the EMG. Is there anything else? The result of the EMG, right, the result of the EMG, which was performed by the physiatrist, Dr. Jesus Maldonado. In addition to the conditions that are described in Dr. Catone's record, like polyneuropathy and other conditions, but also it is important that although the company asserts that position, Dr. Catone performed the kind of tests which is objective, which is appropriate procedure in these kind of cases, physical tests related to muscles, movement of the joints, et cetera, to determine whether that condition exists or not. That was confirmed also by the EMG. So there are two tests. All right, thank you. You're welcome. Judge Thompson, do you have questions of counsel at this point? There's indications in the rejection that Dr. Catone's handwriting was illegible, and I'm trying to figure out if someone sought to reach out to Dr. Catone to get him to either clarify his notes, or did anyone put Dr. Catone on notice that they couldn't understand his handwriting? Your Honor, according to what I've read in the record, there are some instances in which the physician's consultant retained by MedLife say that they tried to reach some doctor and they were not able to. But in the case of Dr. Catone, he was reached by MedLife experts, and he answered the questions. In addition, it is interesting, I would like to add related to that, that the physicians retained by MedLife, one of them, in order to stress their position that Santana Diaz would not qualify for the extension of benefits, he says that he talked to Dr. Catone on June 3, 2011, and Dr. Catone told him that Santana Diaz's main complaints had to do with a depressive disorder, but that cannot be possible because that expert rendered his report on June 2. So how come he would say that the next day he rendered his report, he talked to Dr. Catone? So it clearly depicts a bias by the company retained specialist. Thank you. You're welcome, Your Honor. Good morning. My name is Frank Gotay, and I am counsel for the Apelli Metropolitan Life Insurance Company. The only issue in this case is whether MedLife's decision was reasonable and supported by substantial evidence. The determination of whether MedLife was reasonable is fact-oriented, and in order to assess whether, in fact, the record supports MedLife's decision, we have to examine the facts as they are ascertained from the administrative record. In this case, after paying Mr. Santana benefits for two years due to his mental condition, which was a condition on which he claimed benefits initially, MedLife advised Mr. Santana that if he remained disabled and had one of the exclusions to the 24-month limitation or maximum benefit duration period, he had to submit evidence to establish him. Mr. Santana did not submit any clinical evidence or objective medical evidence to establish that he had any other condition which would have entitled him to further benefits. So at the end of the two-year or the 24-month period, MedLife denied or issued its initial decision terminating benefits and advised Mr. Santana again of his right to appeal and the necessity to submit objective evidence sustaining or supporting his claim that he had one of those conditions for which payment of benefits was allowed beyond the 24-month period. Mr. Santana submitted certain medical data and information, and in order to comply with the planned regulations or the planned guidelines, MedLife submitted all of the information to two independent medical consultants. One of them was a psychiatrist. The other one was or is a board-certified occupational medicine doctor. After both analyzed the evidence, they both submitted detailed reports discussing what they had found in the record and indicating that there was nothing in the record showing that Mr. Santana was disabled due to any condition that would permit MedLife to pay benefits beyond the 24-month period. It is important to note that those reports of the two independent medical consultants were forwarded to Mr. Santana and to his physicians with the request that they please review the reports, submit any comments that they had, and if they were in disagreement with those reports, that they submit objective evidence to allow or to permit a determination that, in fact, Mr. Santana had one of the conditions that are outside the maximum 24-month benefit period. One of the doctors, Mr. Santana's psychiatrist, responded simply saying that she had no comments and that she had already submitted all the evidence that she had. It is necessary to note that this psychiatrist was the one who had determined or who had rendered reports initially saying that Mr. Santana had depression, and precisely based on that condition or that diagnosis and on the plan requirements, was that MedLife paid Mr. Santana benefits for two years. The two other physicians, one of them submitted certain or an order for an MRI and the result of the MRI to which the There was evidence in the file that showed that Mr. Santana had conditions or a diagnosis that entitled him to benefits and that MedLife had all the information in order to process Mr. Santana's claim. The information, including Dr. Cattoni's statement, was forwarded again to the two independent medical consultants who reviewed and rendered additional reports saying there's nothing here that establishes that there is, that Mr. Santana is suffering from a condition entitled him to benefits beyond the 24-month period. The reports of those two, both the initial reports and the two additional reports, were detailed reports discussing all the medical evidence that had been submitted to MedLife and on which MedLife relied in order to render its decision. The thing here is that, first of all, there is conflicting evidence. And the fact that there is conflicted evidence that is entitled or that allows a determination that MedLife's decision was reasonable. But more than conflicted evidence, what there is here is really conflicting opinions because the evidence is there. I mean, there's no objective evidence that Mr. Santana suffers from a condition entitled him to benefits, in addition to those that he was already paid. Which of the two positions, or maybe both, were actually expressed in the response to the claimant? That there was no objective evidence or that there was competing evidence? Both things. Both were set forth? Yes, yes. The reports which were given to Mr. Santana and his decisions and the letter, both the initial determination and the final decision expressed in detail, you know, in summary, that the evidence, there was lack of objective evidence establishing that he suffered from a condition entitled him to further benefits and the fact that, you know, of the evidence that MedLife had analyzed and which, in essence, showed that at best for Mr. Santana there was conflicted evidence. So based on that and on the plan's requirements, the only determination that can be made at this point is that MedLife had substantial evidence to sustain its decision and that its decision was reasonable on the ground. Could you just comment on how you read the text that your opponent was relying on where he just quotes that language, if there is objective evidence of the condition, that that's enough? I take it he's advancing two arguments. One, that so long as you meet your burden of putting forward objective evidence of the condition, that's enough independent of what competing evidence there is. Well, there is a penance contention or interpretation, but that's not what the plan says. It requires objective evidence. And the case law clearly says, not only from this circuit, but from other circuits, that in case of conflicted evidence, then the insurer or the plan must make a determination. I mean, there has to be someone who makes a determination, and that determination is not left by the plan. I'm just saying there's two different types of determinations one could make. One is the determination that there is no objective evidence. Right. Which you could get deference. Another is there is objective evidence there, but there's also competing evidence that we think is more persuasive. I don't know if there's a difference between those two things or what exactly your position is about how to interpret the plan. The fact that objective evidence of certain aspects is submitted to the company does not, per se, makes or forces the plan to grant benefits if there is conflicted evidence. That's what I'm saying. Where in the text of the plan are you getting that notion from? Well, there's no specific language saying that, but there's no language either saying that as far or as the near fact. He quotes that language saying if there's objective evidence of the condition, he wins. And the text seems to say, unless there's some text I'm missing. Unless there is objective evidence. But who will determine, first of all. That I understand. So there is a determination by MetLife that there is no objective evidence, and then you claim you get deference on that. And also, the plan clearly grants the discretion to MetLife to make determinations on claims. So it's MetLife, the one who is going to determine whether a claimant is entitled to benefits and whether the evidence submitted to it is sufficient in order to make him the appellant or the claimant eligible for benefits. And MetLife's determination that there was no objective evidence put forward is based, just say it one more time until I get it straight. That is correct. And that's based on what finding? That what Dr. Catone put forward is not objective evidence? Dr. Catone simply submitted his general comments as to what he thought or what he had found, but he never submitted any type of objective evidence supporting his conclusions or his diagnosis. Judge Thompson? I'm trying to figure out why Dr. Catone's office notes don't constitute objective evidence, his findings. Well, because the notes that Dr. Catone submitted were his conclusions, but there was nothing objective evidence. His test reports, lab reports, any type of test that had been done to the claimant on which those conclusions or opinions of Dr. Catone were supported. Well, you're saying then that if Dr. Catone examined the patient and conducted certain evaluation techniques in his office and reached medical conclusions, that that's not objective evidence? That is correct. That is the position of MetLife. But in addition to that, Your Honor, in the opinion or in the view of the two independent medical consultants who reviewed the evidence, all of the evidence that had been submitted, that evidence did not establish that Mr. Santana, the appellant, suffered from any condition that entitled him to further benefits. So we again go to the fact that there were conflicting evidence or conflicting opinions. And on that basis alone, I mean, the fact that there was conflicting evidence, that doesn't render MetLife's decision unreasonable. What's the textual basis for that final conclusion? That's what I'm just not seeing. If the plan says that what there has to be is objective evidence of the condition, your position seems to be, I understand, one, there was none. But your second position seems to be even if there was objective evidence of the condition put forward, so long as there was competing objective evidence, the claim can be denied. And I'm just trying to see what in the text of the plan supports that second proposition. Well, there's no language. We'll put it stronger. The contention is the plan says the claimant wins if there is objective evidence. But you seem to be saying that even though the plan says that, he still loses as long as there's competing objective evidence. That's what I'm not following. No, because the plan doesn't say that if he submits objective evidence, he wins. That's not what the plan says. The plan says that in order to qualify for benefits beyond the 24-month maximum benefit period, he must be suffering from X conditions supported by objective evidence. Unless there is no objective evidence. Right. That's the text? Right. So wouldn't the natural reading of that be if there is objective evidence? He doesn't win. Okay. Automatically. Okay. Okay? Because that, I mean, Medlife is the one who... What's that unless clause doing then, textually? I just don't quite get it. Well... Because you wouldn't need it. You would just say you have to be suffering from the condition. Then Medlife would say, well, we looked at all the evidence and we think he's not. There's conflicting evidence. But since there's that unless clause, your reading seems to make that unless clause superfluous. That's what I'm having trouble with. Because it's not sufficient that he suffers from, that he alleges that he suffers. That he alleges that he suffers. No, he has to have objective... That's shown by objective evidence. But, again, in the view of someone, he could be suffering from that condition. But in the view of another physician or in light of other medical evidence in the record, that condition or that determination may not be contested or is conclusive. So is there evidence of other nature? I mean, or is there evidence, I should say, that reasonable can be construed as disputing or creating some conflict of doubts as to whether the claimant suffers from a condition. Someone has to make a determination. In this case, under the plan guidelines, under the plan itself, Medlife is the claimant's administrator, the one who has the power to make a determination as to whether the claimant is entitled to benefits. Judge Thompson, additional questions? I'm good. Thank you. Thank you, counsel. Thank you very much.